Good morning, and welcome to our court. At the outset, Judge Newsom and I again wanted to welcome and thank our visiting judge, Judge Bucklow, from the Middle District of Florida for helping us with our work and joining us on the panel today. For those of you unfamiliar with Judge Bucklow, she has served with great distinction for many years on the district court in the Middle District of Florida. She served and has served in that capacity since she was appointed by President Clinton in 1993, and we're delighted, Judge Bucklow, to have you with us this morning. Judge Bucklow Thank you. Judge Goldberg Two other brief observations that I wanted to make at the outset, and then we'll proceed with the first of the arguments we have today, U.S. v. Brooks, and that is this. One, as you make your arguments, you can safely assume we've had a full opportunity to review the briefs, the record excerpts, and in many instances we've had a chance to review the underlying record itself. So feel free, when you make your argument, to go right to the heart of your argument. I know the time you have is Our lighting and timing system, you'll note that there's a clock here that keeps count of how much time you've used and how much you have left, and there's a lighting system. Green means, of course, you may proceed. The amber or yellow is a two-minute warning. The red light means your time is up, and when you see the red light, we'd be much appreciative if you could bring your remarks to a conclusion. Again, if you're in the middle of a thought or sentence, please feel free to finish it, but we'd like you to try and help us with the timing as we proceed. With that, we welcome you to our court, and we'll begin with the first case, which is the United States v. George Brooks. Conrad Kahn Good morning, and may it please the Court. Conrad Kahn on behalf of the appellant George Brooks. With me at counsel table is Jim Skuthan and Dan Lee Song. I'd like to focus on three issues today. One, the term inducement in the jury instructions. Two, the government's discovery violation. And three, the admission of John Gopian's testimony under Rule 414. Starting with the term inducement in the jury instructions, this Court has repeatedly held that Section 2422B prescribes the intent to cause a minor's assent to sexual activity, not the intent to engage in the sex act. Yet the jury instruction for the substantive offense advised the jury on three occasions that the intent prescribed is the intent to engage in the sex act. What made matters worse is that the prosecutor said in closing argument that Mr. Brooks' conduct qualifies squarely as inducement because he intended to cause a minor to engage in sex. The instruction was a standard jury instruction, right? That's correct, Your Honor. Okay. And I'm not sure, I can't remember now who brought this to our attention, but the United States v. Grafton? Grafton, that was me, Your Honor, yes. Okay. Now, you think that supports your argument? Yes, Your Honor. Because in Grafton, the instruction given was the very instruction we requested effectively. In Grafton, the instruction given was that inducement is to cause a minor's assent to sexual activity. There's nothing about assent in the instruction here. The instruction here simply says inducement is to stimulate or cause. And when you plug that in to the instruction, in all three places the word induce is in that instruction, and we presume the jury follows the instructions it's given, the jury was advised what's prescribed is stimulating or causing an individual to engage in sex, not stimulating or causing the assent to engage in sexual activity. And while those two are rarely divorced from each other, this Court recognized in Murrell when quoting the Sixth Circuit in Bailey that they are not the same thing, and 2422B only prescribes one of those things. So the jury was misadvised about the requisite intent here. But isn't the word induce also fairly defined to mean convince or persuade, something that necessarily goes to mental assent? Your Honor, I would go back to the Murrell case from this Court, the seminal case on defining induce. And they defined induce as to stimulate the occurrence of or to cause because they wanted to differentiate it from persuade, from entice. Because all of them are similar, but if they were the same, they would be superfluous. So they gave it this special definition, but remembering that the context here isn't to stimulate or cause someone to engage in sex, it's to achieve a mental state, a minor's assent. And they recognized these are two different things. One is prescribed, the other is not. And the jury here was advised that what's prescribed is the intent to engage in sex, which this Court has said is not the requisite intent. Given this error, the burden shifts to the government now to show that the error was doubt. It's a heavy burden. And before getting to that analysis, I would just like to state that when doing this analysis, it's different than a sufficiency of the evidence claim. We aren't looking at the facts in a light most favorable to the government. We aren't drawing all reasonable inferences in the government's favor. The question is whether the government can prove beyond a reasonable doubt that a properly instructed jury would have found Mr. Brooks guilty. Here, they can't meet that burden. For instance, the ad here posted by Mr. Brooks sought role-playing sexual activity, and he explicitly said, I'm looking for individuals 18 and over. Agent Heyer responds, hey, well, I have a 10- and a 13-year-old. Would that be something you're interested in? Mr. Brooks says, I'm interested. Second email, Agent Heyer says, are you up for it, capital U-P? Mr. Brooks says he is. By the fifth email, Agent Heyer says, are you serious or are you role-playing? I need to know either way. Mr. Brooks says, I'm interested. A jury could rationally look at this. And I'm not saying this is the only interpretation, but it's a rational interpretation that Agent Heyer caused Mr. Brooks' assent, and that everything that happened thereafter was logistics and planning, the who, what, where, when, and how of how this already agreed-upon illicit sexual activity was going to take place. And because that is a rational interpretation of the evidence, the government cannot meet its heavy burden. This alone is grounds for a new trial. I'd like to turn to the government's discovery violation. The government had an obligation under Rule 16A1E RomaNet 3 to allow Mr. Brooks to inspect and copy the emails in his email account. So you don't contend under Rule 16A1E that the government had an affirmative obligation to disclose anything, right? 16 is written, A1A says disclose, A1B says disclose, A1C says disclose, but A1E says permit to inspect. That's correct, Your Honor. So no affirmative obligation to disclose anything just to allow you to come onto the premises and inspect? Affirmative obligation to permit us to inspect. And that's the obligation that you say was violated? Yes, Your Honor. What happened in this case was that they did have an affirmative obligation to allow us to inspect the accounts which were taken from Mr. Brooks upon arrest. All they did was they gave us a consent form that he signed upon arrest, allowing the FBI to assume his online identity. Let me ask the question this way. Even if we assume, arguendo, that there was error in the case, how did it affect your substantial rights? Yes, Your Honor. Meaning actual prejudice must be shown. After all, it was his phone and presumably he knew what was on his own phone. Yes, Your Honor. And his lawyer could easily have questioned him about what was on the phone, but could have subpoenaed access to it if he had wanted to as well. Show me how in the makeup of this Yes, Your Honor. There's prejudiced substantial rights and it's important to remember a couple things. One, when we're doing substantial prejudice analysis in this context, we're not looking at the government's overwhelming evidence. We're looking at how it affected Mr. Brooks' defense strategy. So what happened here was there was an assuming arguendo, there was a discovery violation, then this extremely prejudicial testimony is elicited about emails with children. The jury's immediately excused for about an hour. They come back and because of the district court's ruling on Mr. Brooks' motion, he has to soldier on with the trial, not even addressing the extremely prejudicial testimony that was just elicited. You actually elicited, or the defense elicited the testimony, right? We elicited the testimony because the government failed to comply with its obligations, letting us know that these materials were available for inspection. And I would point to a similar case. So you ask a question you didn't really know the answer to. We didn't know the answer, Your Honor. Well, if you had known, you wouldn't have asked, would you? Yeah, I assume you wouldn't have. If you knew the road you were going down, you wouldn't have taken it, would you? Correct. And that's because the government And all you had to do was ask your client what was on that phone before asking that question. That's up to you to decide what to ask and how to interface with your client. But I'm hard-pressed to see substantial prejudice under the circumstances when the offending information was elicited by you on cross-examination. And indeed, even when you got your first couple of answers, fearlessly you plowed on and kept going. Well, I would say a couple things. Right? Isn't that right? That's an accurate statement, isn't it? That is correct, Your Honor. But I think the context is important. The plowing through was simply clarifying, if we just heard correctly, that we didn't have information that the government should have permitted us to inspect. But going to your point, more accurate, more specifically about whether it's stuff that we knew about, this is a rule that's about things that belong to the defendant. The Roman at three is the government must allow us to inspect. I'm prepared to concede for the purposes of my question that the government ought to have disclosed it and violated Rule 16 in the process. But that's not the end of the analysis. After a trial by jury, you've got to show me not only did the judge make a mistake, but the mistake was a big deal. It was such a big deal that you sustained substantial prejudice in the process. And that's what I'm trying to help you help me with. Yes, Your Honor. So I just refer to the language of the rule that a violation of this rule is typically going to be something the defendant knew about because it's about things taken from the defendant. But going more specifically to your substantial prejudice inquiry. But even stopping on that point, not only was it something you knew about, it was peculiarly within his knowledge. An iPhone, a smartphone, a personal phone is something very intimate to everybody who has one. And you know what you put on it and you know what you do with it. And he had every reason to know whether he was sending emails and texts to entice or not. And you were certainly able to inquire about that. But the best response, I think, Your Honor, is this court's case law. When you look at United States v. No, for example, which is cited in our brief, that had to do with an individual asserting an alibi defense he knew was a lie. And then on rebuttal, there was evidence presented about that lie that was not disclosed, that should have been disclosed. And this court found a reversible Rule 16 violation. There the defendant knew he wasn't telling the truth, but he was allowed to assert that defense relying on the government having to comply with its discovery obligations. And this court found substantial prejudice. That's cited in our brief. I'd also point to Carmargo Vergara, another case cited in our brief, another case about the defendant's own statement not being disclosed to him. And this court found substantial prejudice. But how would this have changed, back to Judge Marcus's original question, how would this have changed your trial strategy? You had to know that you were going to be facing other bad acts evidence. Yes, Your Honor. And two points. One, at a minimum, we would have moved in limine, like we did for every other piece of bad act evidence. And we did so with some success. Second, we would have absolutely reexamined our entrapment defense, even in the face of knowing that other act evidence was coming in. Because we were prepared to meet that evidence, at a minimum. When you say we examined the entrapment defense, you mean you wouldn't have proposed to defend on those grounds? Your Honor, we'd have to do a more thorough investigation of the email. It seems to me, thinking through the way the case was presented, you almost had to present an entrapment defense here, didn't you? That's not true, Your Honor. We had two defenses in this case. One was that we did not cause or intend to cause. I understand that. But there was something else that surrounded it. And basically, you were saying, not without some evidential foundation, that the government created the whole thing. The government enticed your client. And there was a question of predisposition and so on. But I guess the trouble that I'm having is, it looks to me like there was an awful lot of other evidence, independent of the offending comment that came from your cross-examination, about the defendant's activity in the case. That he was interested in sexual activity with kids, and expressed it in a variety of ways, and took a variety of steps in the past to engage in it, and so on. You faced all of that. So was it difficult to defend, short of using an entrapment defense here? I see my time has expired. No, no. Take your time. And you can answer the question, please. Thank you, Your Honor. We had two defenses. One was an entrapment defense. The other was, we did not have the requisite intent. Regardless of the other act evidence, if the jury interpreted, which we were prepared to explain, one was something that happened 44 years ago that was uncorroborated. The other was a statement to a father that the district court judge even found that sentencing, by a preponderance of the evidence, didn't qualify as 2422B offense. So we were prepared to meet this other act evidence. And a jury could have looked at the conduct in this case, and found that Mr. Brooks had an innocent intent. And because we could have focused on that more thoroughly, we could have moved in limine to exclude these emails, which I would also mention the district court precluded any further mention of after it happened, finding that it was probably cumulative. And then based on what actually happened here, that when the optics of the jury hearing this, undermining both of our defenses, and then having to soldier on, given how it affected our defense strategy, what we would have done differently, the prejudice that actually caused, I would submit that we were substantially prejudiced by this. I understand. You have reserved three minutes for rebuttal. We'll give you the full time. Thank you, Your Honor. Thank you, Mr. Kahn. Good morning. Good morning, Your Honors, and may it please the Court. I'm a little bit under the weather. I apologize for my voice. Please let me know if you're having trouble hearing me. You're doing just fine. We can hear you well. Thank you. I'd like to start, unless the Court disagrees, with the inducement instruction. Murrell clearly holds that the definition of induce is to stimulate the occurrence of or to cause. That is the law in this circuit. And to the extent that Lee says that it is to cause the same thing as what the Court said in Murrell, because Murrell is the first case on point, and so they have to be read consistently. And that forecloses the defendant's argument that the jury was improperly instructed. The jury was instructed consistent with this Court's law. And when you look at this case in the context of what happened, this is a child enticement case. It's not a case of forcible rape as in the non-statutory rape sense. He was doing something through his communications with that father to make sure that this child would show up to engage in oral sex with him and be willing to do so, thereby causing the minor to engage in sexual activity. Regardless of which instruction was given, they mean the same thing in the context of child enticement. Could I ask a question? Do you think United States v. Grafton supports the defense's argument or your argument? I believe it supports our argument because in Grafton the Court said Murrell is the law and then went on to allow a jury instruction that said caused the assent of the minor was improper jury instruction. And the only way again to reconcile that is to say that's because they mean the same thing in this context. It's not adding anything. And that also makes sense if you look at the statutory definition of the child enticement offense. It says child enticement is to induce, persuade, coerce a child to engage in sexual activity. Induce means to stimulate the occurrence of or to cause. What does it stimulate the occurrence of or to cause? The minor to engage in sexual activity. And that's why this court post Lee has continued to accept the jury instruction to cause the minor to engage in sexual activity. It did so in Rutgerson and it did so in Wilkerson. And in Wilkerson the specific intent needed in this type of case is to cause the specific intent to cause the child to engage in sexual activity. And that's a distinguishing, Lee was a case in which the defendant didn't travel to meet with the child. And it was focused on the substantial step. And it said you don't have to prove that the defendant intended to have sexual activity with the child. You just have to prove that the defendant intended to cause the child to have sexual activity with the defendant. And so that's the difference. They don't have to, but this isn't a case in which the defendant didn't intend to have sexual relations with this child. He admitted post Miranda that he was traveling there with the purpose of engaging in oral sex. Right. But your argument is a simple one. Morel's on point. Morel controls. The judge gave the instruction. We approved in Morel. Therefore, it can't be error. Correct. And additionally, that even if there's an argument that his jury instruction would have also been a correct statement of the law, there was no reason to give it in this case. So I would like to then move on unless there's further questions about this to the discovery violation. And I agree with Judge Marcus that the issue in this case is really was there substantial prejudice? Do you concede at the outset that there was a violation? I think that the better course of action would have been for the United States to disclose this material. Factually, what happened is that they came over and looked at your evidence, including the cell phone, right? Correct. You gave them here's the cell phone, but they were because they couldn't get in it. And so never tried. The record is not particularly clear on this issue. But my understanding is that those there were some of those emails on the phone, but that not all of the emails were included in the phone. So from that, it's unclear to me whether or not they actually were given the ability to inspect all of the. Is there any question that the emails come within the rule 16A1EII? I don't believe so. To the extent their statements of the defendant. Was it error not to discourage the information? We all agree it should have been done. Lots of things should be done, the failure of which does not necessarily yield legal error. Was this legal error on the part of the United States not to turn this over? I think it was your honor. OK, so let's go on to why you think it doesn't matter. I think it doesn't matter because. This is not a case in which the defendant was substantially prejudiced by this introduction, because to your point, Judge Marcus, they had they knew the defense knew that the United States was going to be introducing evidence, very bad predisposition evidence that this defendant had previously engaged in sexual or performed oral sex on his seven-year-old nephew. And also that four years prior, he had tried to commit the same sort of offense with a 12-year-old child. And so the idea that what we were going to proceed with an entrapment defense in light of all of that, but the mere mention that there are some emails that reference sexual activity with children would have changed their entire defense strategy, is not a credible argument. And this case then is like Rodriguez. There was some evidence that should have been disclosed that undermined one aspect of their case. It affected a little bit their predisposition argument. But it didn't, unlike no Camargo Vergara, attack the fundamental underlying aspects of their case. And so what you have to look at is the strength to determine actual prejudice is the overall strength of the government. Well, do you suppose he would have stepped down that course and said on cross-examination after asking the arresting agent, there were no other emails to anyone about children? Answered, not that I gathered. No, ma'am. Not on his phone. Question, not on his emails. That's not true. The answer is, he goes on and says, that's not true. Answered, no. There is in his email that he gave us permission to search. I found other emails. Question, you found other emails about children? Yes, ma'am. Were these emails from Craigslist ads? No, ma'am. They were from Mr. Brooks' email account. Question, about sex with children? Answered, yes, ma'am. And these emails were turned over to the defense? No, ma'am. So there are other emails about sex with children that you found on his email? Yes, ma'am. Do you suppose he would have stepped down that road if he had been given what you were obliged to give him? No, Your Honor, I do not. But I don't think that the mere asking of that question substantially prejudiced his defense such that it deprived him of a fair trial. The first question or all the other questions that followed? The first questions and all the other questions that followed. And as I would point out, at one point after they said, no, these emails haven't been disclosed, she continued to ask questions instead of stepping back and saying, okay, let's sidebar and discuss this. But putting that aside, again, asking one question that you definitely wouldn't have asked if you'd known isn't the type of substantial prejudice that requires a new trial because the trial was fundamentally unfair, especially when you look at the strength of the United States case. This case was very strong, both on evidence that he actually committed the offense, you have the emails, you have the phone conversations. And it was very strong on his predisposition because you have the seven-year-old boy, or now the grown man, testifying about what happened to him as a seven-year-old boy. And the fact that he was the nephew of the defendant. And then when the defendant placed his ad on Craigslist, he said, I could be your long-lost uncle reminiscing back to the time when he did engage in this activity with his seven-year-old nephew. And then the evidence that he said, both in the phone conversation and then again, post-Miranda, that he had tried to contact the father of a 12-year-old boy to engage in the same sort of activity that he was going to commit here. And so the defense knew that this evidence was going to come in. There was no the idea that it would change their strategy, that they were unfair. And again, to your point, these were his statements. They might have been surprised about it, but I don't think they were unduly surprised because had they questioned their client about his other emails and asked them, they would have known that he had had other emails. So I just think when you look at the no involved the Fifth Amendment right not to incriminate yourself, this defendant took the stand and actually stated that he couldn't have done this because he wasn't there at that time. And then they presented a recording of statements that directly contradict that, not only implicating his rights to this discovery, but his lawyer might have advised him not to even take the stand in the first place. This isn't that case. All they can say is the defense attorney wouldn't have asked one question. But when you look at this case in light of the strength of the government's case, what they knew about him, what they knew about his predisposition, he wasn't deprived of a fundamentally fair trial. Can I just ask you this, not to try to unring any bells, but I want to understand your concession in response to Judge Marcus's question that there is a violation here. Can you just explain to me why that is? There could be something factually I'm missing, but the rule says, unlike A1, A, B, and C, no affirmative disclosure obligation, but upon a defendant's request, the government must permit the defendant to inspect. How is it that you, that the government prevented the defendant from inspecting? I thought that as a factual matter, lawyers were able to come to the FBI or wherever it was and look through the stuff. Is the prevention that gives rise to your concession, your statement to him that the passwords had been changed? It comes from looking at the district court standing order that said basically everything has been requested under Rule 16. So I look at that as saying they've requested to inspect all statements of the defendant. This was a statement of the defendant. It should have been disclosed based on the standing order requesting, saying that all Rule 16 discovery had been requested. But I do think that, again, this wasn't, this was a, to the extent it was a discovery violation that I'm conceding, it was a very inadvertent one. I fully believe the prosecutor thought by telling them about these email accounts that if, and the fact that the passwords have been changed, if they wanted to access these accounts that they would have asked. And so while I do think that I do have to concede it was a violation, I do want to make very clear that it was a really inadvertent violation that the prosecutor, I think, really did believe that she had made them available for inspection. Thank you. Thank you. If there are no further questions. Let me just ask you this. I suspect your opponent in his opening, and I know that he'll want to cover it on his reply, said that he wanted to talk about the Gapoyan testimony. We should give you a fair chance to discuss that as well, knowing that he's likely, I suppose, to want to discuss it. Well, he probably, in fairness, should have raised it in his opening argument for it to be relevant at this point and has not. So we'll give you a moment or two, but we'll move on. I would just like to say there's nothing about the language of 414 that would require the categorical approach. The categorical approach typically applies to sentencing enhancements. The only time that it is not applied to a sentencing enhancement is 924C. But in 924C, the language of the statute clearly called for the categorical approach. There's nothing about the language of 414 that calls for the categorical approach. The defendant argues that the word accused means the actual statutory elements of the offense, but there's nothing about the word accused. Accused is much more broad. It means what is the government saying that the defendant did? And here we were saying the defendant did an act that qualifies as child molestation. Federal rule of evidence 414, the legislative intent was to broadly permit this evidence, recognizing that the fact that a defendant had engaged in child molestation behavior in the past was probative of their propensity to engage it in the future because it shows a sexual interest in children. And so there's just nothing about. And this is a rule of evidence to sort of blindfold the judge and say, you can't look at what this offense actually is. You have to just look at what it is categorically, especially when 403 still comes into play. And so the court can always decide, even if it's admissible under 414, we're not going to let it in in this case. So there's no and there's no Sixth Amendment issue that comes into play, usually when the categorical approach is applied. There's just no reason to extend the categorical approach into 414, the rule of evidence. And I would say the court should not do so. Thank you. Thank you. I would ask that the court affirm the district court. Thank you, Your Honors. Mr. Khan, you've reserved three minutes. Just to quickly start with the inducement point, the government's now saying that Murrell and Lee are somehow in conflict, which to me is an extraordinary proposition. If you look at Murrell, even Murrell says when quoting the Sixth Circuit in Bailey that this crime is about a mental state and while the two are rarely divorced, 2422B prescribes one and not the other. So Murrell is also consistent with the assent idea. So I would maintain that the jury instruction here was incorrect, even under Murrell, in contextual reading of Murrell. And for the reasons we discussed, I believe it's harmless. The government cannot meet its heavy burden to show harmless beyond a reasonable doubt error. Turning to the discovery violation, I admire the government's candor to admit it was a violation, but it was substantially prejudicial. It wasn't just a mere question. The optics of the situation were that we asked a question, the jury just heard this extraordinary testimony, was immediately excused, and then came back. And because of the way the district court ruled on the mistrial, we all of a sudden had a soldier on without ever referencing this completely defense-shattering testimony it just heard. It wasn't just merely a question. And the government continues to talk about the overwhelming evidence in this case. That's not the way we evaluate substantial prejudice, according to Noe and Carmargo Vergara. We look at how was the defense affected, the ability to present his defense. As I explained before, we certainly would not have asked a question. We would have moved in limny like we did with every other piece of other act evidence, like we did with some success. We certainly would have re-evaluated and possibly got rid of the entrapment defense. So given what was elicited, given the severely prejudicial optics, considering how it affected our defense strategy, I would maintain we were substantially prejudiced by the discovery violation. Well, you could have gotten rid of the entrapment defense anyway, couldn't you? I mean, you asked for the entrapment instruction, but this occurred before the instructions were given, so you didn't really need an entrapment instruction if you were going to come away from that. Your Honor, we had already started the trial. We had an opening statement where we told the jury what our theory was. We had been questioning Agent Heyer, focusing on that to simply abandon it now, but it just gave more credibility to the prejudicial testimony that was just heard. At this point, it was too late. We had to soldier on and do the best we can in light of what just happened and in light of the district court's ruling. I would just really quickly like to turn to the 414 evidence. Is that okay? We have a very short period of time. We will keep you to the three minutes, Counselor. One point. The word accused does not generally refer to wrongdoing. In a legal context, it is a term of art. It has a specialized and narrow meaning. It talks about when the government, by information or indictment, charges somebody with a crime. An indictment always sets forth the elements of the crime. Even here, it did, but it did not set forth the conduct. I see my time has expired. Thank you, Your Honor. Thank you very much, and thank you, Counsel. We'll proceed to the next case, which is CRI.